UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS WILLIAM SINCLAIR RICHEY,<br><br>Plaintiff,<br><br>v.<br><br>CHERYL SULLIVAN, T MATSEN,<br><br>Defendants. | CASE NO. C14-5050 BHS-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR AUGUST 1, 2014 |

This 42 U.S.C. § 1983 civil rights matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4.

Before the Court are cross motions for summary judgment (Dkt. 12 and 13). The Court recommends denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment. The penological reasons for not allowing an inmate to obtain unused greeting cards from unapproved sources are obvious and readily apparent. Further, plaintiff's own exhibits cite a decision from 1992 recognizing that a prohibition on receiving blank cards is reasonably related to legitimate penological interests (Dkt. 12, p. 13). In light of this authority of

REPORT AND RECOMMENDATION - 1

1 which plaintiff was aware, the Court concludes that this action was filed for an improper purpose
2 and is frivolous and malicious.

## FACTS

During the relevant period of the complaint, plaintiff was a prisoner at Stafford Creek Corrections Center. Defendants Sullivan and Matsen were mailroom employees at the facility. Plaintiff alleges that defendants Sullivan and Matsen improperly rejected incoming mail consisting of two greeting cards (Dkt. 5, p. 4). Plaintiff has placed copies of the cards into the record and the content of the cards is not in dispute (Dkt. 12, pp. 7-9). The sender of the cards did not write anything in them or sign them (Dkt. 12, pp. 7-9). Defendants rejected the cards because they considered them "blank" (Dkt. 13-1 p. 28). Further, before filing this action, plaintiff knew that defendants' definition of "blank" meant unused or unsigned (*id*.). In a letter rejecting plaintiff's appeal dated October 14, 2013 -- over two months before plaintiff filed this action on January 16, 2014 – Roy Gonzalez, Correctional Manager, gave plaintiff defendants' definition of the term "blank" (Dkt. 13-1, page 28). Despite knowing how defendants applied the term, plaintiff filed this action claiming the cards were not blank because the cards "expressed pictorial communication." (Dkt. 5, p. 4).

Plaintiff alleges that defendants' actions violate his First Amendment right to receive mail (Dkt. 5, p. 4). Defendants argue that the rejection of plaintiff's mail furthered legitimate penological goals and was therefore constitutional (Dkt. 13, pp. 6-9). Defendants also raise the affirmative defense of qualified immunity (Dkt. 13, p. 9).

## STANDARD OF REVIEW

In federal court, summary judgment is required pursuant to Fed. R. Civ. P. 56(a) if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no

genuine issue as to any material fact. *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997). Once a party has moved for summary judgment Fed. R. Civ. P. 56(c) requires the nonmoving party to go beyond the pleadings and identify facts that show that a genuine issue for trial exists. *Id*. at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To state a claim pursuant to 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). 42 U.S.C. § 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

A complaint is frivolous if "it lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Leave to amend is not necessary if it is clear that the deficiencies in the complaint cannot be cured by amendment. *Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984).

The standard for dismissal as "malicious" has not been well defined by case law but some guidance exists. In *Abdul-Akbar v. Department of Corrections*, 910 F. Supp. 986, 999 (D. Del. 1995), the District Court in Delaware considered the malicious standard and stated:

> A separate standard for maliciousness is not as well established. *Deutsch* [*v. United States*, 67 F.3d 1080, 1086] merely states that a district court 'must engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure, or harass the defendants.' *Id*. Other Circuits, however, have offered more objective instances of malicious claims. For example, a district court may dismiss a complaint as malicious if it threatens violence or contains disrespectful references to the court. *Crisafi v. Holland*, 655 F.2d 1305 (D.C.Cir. 1981); *see also Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981) (stating that courts may dismiss pleadings with abusive or offensive language pursuant to the court's inherent powers under FRCP 12(f)). In

addition, a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims. *Id.*; *Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975); *Duhart v. Carlson*, 469 F.2d 471 (10th Cir. 1972).

Other courts have found the term "malicious" means irresponsible or harassing litigation. *Daves v. Scranton*, 66 F.R.D. 5 (E.D. Pa. 1975). The Pennsylvania District Court Stated:

> The legal standard of "frivolous or malicious" is not capable of precise definition for it is a standard intended for administration within the broad discretion of the court and to be applied with reasonable restraint but as a practical response to irresponsible litigation which would otherwise be subsidized and encouraged by the generosity of the *in forma pauperis* statute.

*Daves v. Scranton*, 66 F.R.D. 5 (E.D. Pa. 1975).

## DISCUSSION

1. The constitutionality of the blank card policy.

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Hargis v. Foster*, 312 F.3d 404, 409 (9th Cir. 2002) (quoting *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001)). "A prison regulation that impinges on an inmate's First Amendment rights is "valid if it is reasonably related to legitimate penological interests." *Hargis*, 312 F.3d at 409-10, (*citing Shaw v. Murphy*, 532 U.S. 223, 229 (2001) *quoting Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The Supreme Court has provided four factors that are relevant in determining if the prison official's actions are reasonably related to legitimate penological goals:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." *Turner*, 482 U.S., at 89 (*quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984)). If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether

      the other factors tilt in its favor. *Turner*, 482 U.S., at 89-90. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives. *Id*. at 90.

*Shaw*, 532 U.S. at 229-30.

    A.    The connection between the regulation and a valid penological goal.

Defendants set forth their reasons for the policy in their motion for summary judgment:

> Here, the purpose behind DOC Policy 450.100's ban on blank greeting cards is protecting prison security by: ensuring inmates purchase and receive blank greeting cards from approved sources, which guarantees the safety and integrity of such items; limiting the potential for an unregulated market of goods that may lead to disagreements, debts between offenders, and fighting; and eliminating at least one vehicle through which contraband may enter the facility, saving staff time and resources and promoting the safety of staff and offenders. Regulations and policies that aim to protect prison security are legitimate "beyond question." *Thornburgh*, 490 U.S. at 415.

(Dkt. 13, p. 6 (*citing Thornburgh v, Abbott*, 490 U.S. 401, 415 (1989))). In response to defendants' motion for summary judgment plaintiff argues that under the first prong of the analysis, the first reason given for defendants' policy is contradicted by defendants' own statement that they would have allowed the cards in "had Richey's correspondent simply signed such items" (Dkt. 15, p. 3). Plaintiff's argument disregards the fact that the greeting cards were rejected because they were unsigned and if he were allowed to receive these cards it would open a new unsecured source for incoming new or blank greeting cards.

    The cards were contraband that plaintiff could trade or sell. Defendants were clear that they are trying to limit "the potential for an unregulated market of goods that may lead to disagreements, debts between offenders, and fighting" (Dkt. 13, p. 6). The Court finds plaintiff's first argument is without merit.

Plaintiff also argues the United States Courts for the Eastern District of Washington's decision in *Turner v. Potts* held that the rationale for refusing to deliver blank cards was also untenable because an inmate can obtain blank cards from the chaplain (Dkt. 15. p. 4 (*citing Turner v. Potts*, Eastern District of Washington CS 94-307-JBH )).

Plaintiff misquotes that court's decision.  In fact, the Eastern District of Washington stated:

> Plaintiff's concern is not really with the new/blank greeting card policy itself. Plaintiff's concern is whether it was proper, based on that policy, to reject the greeting cards which were addressed to him.  There are valid reasons behind the new/blank greeting card policy.  The policy limits the types of greeting cards to which inmates have access.  The new/blank greeting cards which the inmates receive from the chaplain or the authorized vendor presumably are not padded, laminated, or have any other features which make it possible for inmates to conceal contraband therein or which otherwise pose a security risk to the institution. Secondly, the policy provides some assurance that the cards sent to the inmates do not already contain contraband, due to the fact that they are sent from an authorized source.  Thirdly, the policy limits the number and scope of searches which would otherwise be necessary if just anyone could send blank greeting cards into the institution.

*See, Turner v. Potts*, Eastern District of Washington CS 94-307-JBH Dkt. 21, pp. 6-7).  Thus, the rational of the decision supports defendants' position.

Plaintiff also argues that the rejection of his card is content driven (Dkt. 15, p. 5).  His argument is based on the statement that if the card had been signed it would have been delivered (id.).  Plaintiff's argument ignores the fact that the card would have been used if it had been written on and, therefore, would have less or no trading value.  Plaintiff fails to show that the decision to reject the cards was based on anything in the card or the card's contents.  In fact, the undisputed fact is that the rejection was based on failure of the person sending the cards to sign them.  The Court concludes that there are valid penological reasons for limiting the sources for

1  inmates obtaining unused greeting cards.  Therefore, the first factor of the four prong test favors

2  defendants.

3        B.      Alternative means for expression.

4  There is no need for an alternative means of expression in this instance because the card

5  was deliverable if it was signed.  Further, to the extent plaintiff may have been trying to obtain

6  an unused card, they are available from approved vendors or the chaplain.  This prong of the

7  analysis clearly favors defendants because the avenue for expression and exercise of the

8  plaintiff's First Amendment right remains open.

9        C.      The impact accommodation of the asserted constitutional right.

10  Allowing inmates to obtain unused greeting cards from non-approved sources invites a

11  second market for the items and opens an avenue for smuggling of contraband.  Thus, the prison

12  would be required to conduct more searches to ensure that inmates were not trading items and

13  spend resources reviewing mail to help keep the facility secure.  Defendants state:

14-23
> DOC bans the receipt of blank greeting cards for multiple reasons. First, offenders may purchase blank greeting cards in the offender store. Exhibit 1, at 2. DOC does not allow offenders to buy anything outside of the Correctional Industries Commissary or Access Secure Pak because these two vendors guarantee and ensure that the items they sell have not been tampered with by a person in the community. Exhibit 1, at 2. Second, prison staff needs to be able to control and account for what is inside the prisons. Exhibit 1, at 2. Anything inside of a prison can become a form of currency. Exhibit 1, at 2. Although a blank greeting card may not have much intrinsic value to a member of the public, such items become valuable inside the prison environment and their barter can lead to altercations and unsafe situations for offenders and staff. Exhibit 1, at 2. For that reason, there are limitations on the number of greeting cards offenders can purchase at any one time, or receive from prison chaplains, for example. Exhibit 1, at 2. Finally, a blank greeting card may be used to smuggle contraband into the prison. Exhibit 1, at 2. By disallowing the entry by mail of a class of items that are otherwise available to offenders, prison mailroom staff are able to eliminate entry of at least one form of potential contraband and do not have to spend time and resources searching such items to ensure their safety before delivery to the offenders. Exhibit 1, at 2-3.

24

1  (Dkt. 13, pp. 2-3).

2  Defendants note that plaintiff's own disciplinary history includes him having
3  methamphetamine hidden in an envelope marked as legal mail (Dkt. 13, p. 3).  The Court
4  concludes that defendants' concern with the introduction of contraband is neither fictional nor
5  exaggerated.  The Court concludes that the costs and impact of allowing an unsecure source for
6  greeting cards is unacceptable and that this factor clearly and heavily favors defendants.

7  D.  The absence of ready alternatives.

8  Plaintiff does not set forth any alternatives to the current policy; he simply argues that the
9  policy violates his First Amendment right to receive mail (Dkt. 12 and 15).  The Court concludes
10 that defendants have shown legitimate penological reasons for their policy regarding an inmate
11 receiving blank greeting cards from an unapproved source.  The Court recommends granting
12 defendants' motion for summary judgment.

13 Having concluded that defendants' actions and the policy are constitutional, the Court
14 does not address the affirmative defense of qualified immunity.

15 2.  A finding that the action is frivolous or malicious.

16 28 U.S.C. § 1915(e)(2) gives the Court the authority to dismiss an action at any time if
17 the Court finds the action frivolous or malicious.  Dismissals under 28 U.S.C. § 1915(e)(2) count
18 as strikes pursuant to 28 U. S. C. § 1915(g).  Here, plaintiff filed six actions in the first few
19 months of 2014:

20 1.  14-5050 BHS *Richey v. Sullivan* et al. (Action challenging mail and ability to
21 receive blank greeting cards).

22 2.  14-5071 BJR *Richey v. Dean* et al. (Action challenging being five days without
23 paper during transfer, Report and Recommendation to find the action frivolous pending).

24

REPORT AND RECOMMENDATION - 8

3. 14-5158 RBL *Richey v. Fleenor* et al. (Action challenging outgoing legal mail policy and delay regarding mailing so that an infraction could be written).

4. 14-5159 BHS *Richey v. Warner* et al. (Action challenging the constitutionality of an earned incentive program for inmates that includes limiting an inmate's ability to obtain privileges such as candy or pizza)(Motion to dismiss converted to a Summary Judgment motion).

5. 14-5236 BHS *Richey v. Gonzalez* et al. (Action challenging mail policy that prohibits sending mail for re-mailing)(Report and Recommendation to revoke in forma pauperis status pending).

6. 14-5268 RBL *Richey v. Glebe* et al. (Action challenging a limitation on writing paper while housed in an Intensive Management Unit for two weeks (Case dismissed on screening for failure to state a claim)).

Plaintiff has been filing actions regarding issues he has already litigated. In *Richey v. Gonzalez*, 14-5236 BHS/KLS plaintiff challenged not being able to send out multiple envelopes for re-mailing (*Richey v. Gonzalez*, 14-5236 BHS/KLS Dkt. 5). Plaintiff had previously litigated, and lost, the same issue in *Richey v. Sykes*, 12-0660 JLR/MAT. In *Sykes* plaintiff was trying to have a third person mail multiple envelops for him including one to inmate Gus Turner (*Richey v. Sykes*, 12-0660 JLR/MAT Dkt. 23, p. 2). Plaintiff is systematically and repeatedly challenging the mail policy despite having previously litigated different aspects of that policy.

The Court's review of plaintiff's 2014 filings leads to the conclusion that plaintiff's current wave of litigation is abusive of the judicial process, is irresponsible litigation that should not be subsidized or encouraged by in forma pauperis statu*s*. Further, as noted above, plaintiff is now repeating claims previously litigated. *Abdul-Akbarv. Department of Corrections*, 910 F. Supp. 986, 999(D. Del. 1995); *Daves v. Scranton*, 66 F.R.D. 5 (E.D. Pa. 1975). The Court also concludes that given the number and nature of the cases that plaintiff filed in 2014 plaintiff is litigating cases for an

improper motive, to vex and harass prison officials. *Abdul-Akbarv. Department of Corrections*, 910 F. Supp. 986, 999(D. Del. 1995). Accordingly, the Court recommends counting this filing as a strike pursuant to 28 U.S.C. 1915(g) because this litigation is frivolous and malicious.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on August 1, 2014, as noted in the caption.

Dated this 14th day of July, 2014.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10